WILLIAM H. URBANSKI, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Urbanski v. Commissioner
Docket No. 9870-84.
United States Tax Court
T.C. Memo 1986-551; 1986 Tax Ct. Memo LEXIS 58; 52 T.C.M. (CCH) 1032; T.C.M. (RIA) 86551; November 17, 1986; As Amended December 10, 1986 *58 P's wife embezzled over $2 million from her employer. After P learned of the criminal charges against his wife and after she pleaded nolo contendere, P signed a blank Form 1040. P's wife then filled in the form and mailed it. P did not review the return before it was mailed. Held, P was not an innocent spouse for the 1981 tax year. William H. Urbanski, pro se. Patricia Anne Golembiewski, for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, *59 Judge: Respondent determined deficiencies and additions to petitioner's income tax as follows: Additions to Tax
Year
Deficiency
Section 6653(b) [1]
1977
$64,181
$32,091
1978
243,320
121,660
1979
514,291
257,146
1980
686,689
343,345
1981
873,309
436,655
After concessions, the issue for decision is whether William H. Urbanski (hereinafter referred to as petitioner) qualifies as an innocent spouse under section 6013(e) so as to relieve him from payment of income taxes on amounts embezzled by his wife Rose Urbanski (hereinafter referred to as Rose) in 1981 and omitted from the joint return filed by petitioner and Rose for that year. Rose filed a petition on her own behalf at docket No. 9871-84. The parties in that case have settled the entire case and the Court has entered its decision. Respondent concedes that petitioner is entitled to relief under section 6013(e) for the years 1977 through 1980 and that petitioner *60 is not liable for the section 6653(b) additions to tax for any of the years in issue. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated by reference. Petitioner was a resident of Millbrae, California, when he filed his petition in this case. For 30 years, until his retirement at age 53 on May 1, 1979, petitioner was employed as a police officer by the City of Millbrae Police Department. From early 1980 until January of 1982, petitioner worked at businesses owned by his stepdaughter and her husband. Petitioner graduated from high school but did not attend college. He attended various types of training classes during his enlistment in the United States Army, when he was with the military police, and during his employment as a police officer. For more than 20 years and until January of 1981, Rose had been employed as the assistant treasurer in the San Mateo, California, offices of the URS Corporation (hereinafter referred to as URS), an international professional services organization. Rose was a tax accountant at URS responsible for the completion of consolidated tax returns, *61 consolidated financial statements and all Security and Exchange Commission reports. On January 5, 1982, Rose was arrested for embezzling funds from URS. The criminal complaint charged Rose with grand theft and forgery from April, 1980, until December, 1981, and arson. Petitioner first learned of the criminal charges against Rose at the time of her arrest. On February 8, 1982, Rose appeared in San Mateo Municipal Court for her second arraignment and pleaded nolo contenders to a charge of grand theft of more than $2 million during 1980 and 1981. Later Rose was sentenced to a three-year prison term in connection with those charges. From 1977 through 1981, Rose deposited checks written on URS's general account into a joint checking account she held with petitioner. The joint checking account was used to pay the couple's mutual personal living expenses, as well as a variety of other expenses. At all times relevant to this case, Rose had primary responsibility for the couple's financial affairs. Although they had a joint checking account, petitioner wrote only a few checks on the account. Petitioner never reviewed the check register, nor did he ever know the balance of the checking *62 account. Rose took charge of the accounting for the couple's income tax liability. At the beginning of the year she would give petitioner a blank Form 1040 to sign, which she later completed and filed. Petitioner did not review the returns before Rose mailed them to the Internal Revenue Service. They followed this practice in filing their joint income tax returns at all times during their marriage. Sometime between February 9, 1982, and March 29, 1982, Rose gave petitioner a blank Form 1040 to sign, which she later completed and filed as their joint income tax return for 1981. Petitioner did not review the return before Rose mailed it. When he signed the blank Form 1040 for 1981, petitioner knew that Rose had pleaded nolo contendere to the charge of grand theft of more than $2 million during 1980 and 1981. At all times relevant to this case, petitioner cashed his paychecks and pension checks or deposited them into a joint savings account and used the funds for a variety of his personal expenses. Petitioner and Rose also held four other joint savings accounts, all of which were funded by petitioner with transfers from the first savings account. Petitioner alone controlled *63 all five savings accounts. Rose did not make deposits to or withdrawals from any of these five accounts, nor did she have access to the passbooks. Petitioner also deposited $6,295.29, the proceeds from the sale of his duck club membership, and $69,678.14, the proceeds from the sale of the couple's interest in a condominium, into the joint savings accounts. Rose has one adult daughter, Sandi, from a former marriage. Sandi was married on March 3, 1979, to Steven J. (Joe) Grisolio in Reno, Nevada, at the Sahara-Reno Hotel and Casino. Petitioner and Rose paid the expenses for 32 guests to attend the wedding in Reno. These expenses included round-trip air fare, hotel accommodations and the wedding dinner held at the Sahara-Reno Hotel and Casino. The funds for these expenses came from petitioner's and Rose's joint checking account. In late 1977, Sandi and Joe acquired a business known as DJ Auto Body (hereinafter referred to as DJ). In August of 1980, they acquired a business known as T & H Towing (hereinafter referred to as T & H). Sandi and Joe ran these two businesses which shared the same facilities. From early 1980 until January of 1982, petitioner worked at DJ and T & H and *64 received paychecks from the businesses. Petitioner had supervisory authority over the other employees at DJ and T & H. In addition to the checks deposited into the joint checking account during the years 1977 through 1981, checks totaling $28,280.95 embezzled by Rose from URS were deposited into the DJ checking account. During that time, Rose also drafted checks totaling $1,207,538.48 from petitioner's and Rose's joint checking account and deposited them into the DJ and T & H business checking accounts. Rose also deposited checks embezzled from URS totaling $20,945.62 and checks written on petitioner's and Rose's joint checking account totaling $918,456.61 into Sandi's and Joe's personal checking accounts. In early 1980, Rose and petitioner purchased a one-half interest in a condominium for $50,000 with funds from their joint checking account. At the time they purchased their one-half interest in the condominium, the balances in the joint savings accounts totaled $18,697.94. Later Rose and petitioner resold their interest receiving proceeds of $69,678.14. Petitioner deposited the proceeds of this sale into one of the joint savings accounts. In December of 1981, petitioner *65 and Joe bought a business known as Bill and Joe's Auto Body. They each held a 50 percent interest in the business, which they operated as a partnership. They paid a total of $100,000 for the business; petitioner paid $50,000 for his one-half share, using funds from his joint savings account. Petitioner paid an additional $5,000 as a contribution to capital using funds from one of the joint savings accounts. At all times relevant to this case, Rose, assisted by Sandi, maintained the books and records of the two businesses operated by petitioner, Sandi and Joe. Petitioner had check signing authority over the business checking accounts held in the names of DJ, T & H and Bill and Joe's. Sandi and Joe received other gifts from Rose, including a custom race boat, several tow trucks, a $56,736 Ferrari, furnishings for their home and a $6,281.74 Harley-Davidson motorcycle, all of which were purchased with funds embezzled from URS. Rose also used $70,000 of the embezzled funds to purchase jewelry for Sandi. Neither Rose nor petitioner filed Federal gift tax returns. When Sandi and Joe purchased their personal residence in 1979, Rose was a record co-owner with them.Petitioner executed *66 a quitclaim deed to the property. Rose also used the embezzled funds for a variety of purposes, such as purchasing clothes for herself and petitioner, gifts for other people, including an automobile for Rose's secretary; painting, remodeling and redecorating their home; making loans to several people; taking others out to lunch and dinner; and purchasing on an almost daily basis fresh flowers and green plants for every room in petitioner's home and the Grisolio's home. During the years 1977 through 1981, Rose also wrote checks to jewelry stores totaling $38,302.24, and she purchased jewelry from a gentleman named Piscotta. Checks made payable to Mr. Piscotta during those years totaled $15,045. During the years 1978 through January of 1982, checks written on the joint checking account to a San Francisco area furniture store totaled $29,176.79. In 1981, two checks written to Wines International totaled $2,846.48, and checks written to All Wynds Travel totaled $1,971. Petitioner traveled to Reno, Nevada, each year during 1977 through 1981 and was usually accompanied by Rose. Each year petitioner participated in one or two golf tournaments in Reno, paying all the expenses for *67 the tournaments from his pay and pension checks. Rose and petitioner gambled at several casinos in Reno. Checks written on their joint checking account to these casinos totaled $3,900 during the years 1979 through 1981. During 1980 and 1981, Rose spent money on improvements to the home she shared with petitioner. She paid $3,000 for landscaping work, $7,170 for painting services, $5,956.57 for tile work and $7,285 for carpet laying services. Rose hid her purchases from petitioner. She changed her clothes frequently, so that petitioner could not keep track of her wardrobe. She destroyed all records of the joint checking account, picked up bank statements at the bank herself and did not allow petitioner access to the check register. In Rose's own words, she "always did everything on the sneak or lied" about her activities. OPINION Respondent concedes that petitioner is not liable for the section 6653(b) additions to tax for any of the years in issue in this case and that petitioner is an "innocent spouse" within the meaning of section 6013(e) for the years 1977 through 1980, inclusive. Respondent does not agree that petitioner is an innocent spouse for the 1981 tax year. *68 To be relieved of liability for the tax attributable to the money embezzled by Rose for 1981, petitioner must satisfy the provisions of section 6013(e): [2]
(e) SPOUSE RELIEVED OF LIABILITY IN CERTAIN CASES. -- (1) IN GENERAL. -- Under regulations prescribed by the Secretary, if -- (A) a joint return has been made under this section for a taxable year, (B) on such return there is a substantial understatment [3] of tax attributable to grossly erroneous items [4] of one spouse, (C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, and (D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement, then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such substantial understatement. *69 The burden of proving each element of section 6013(e) is on petitioner. Rule 142(a); ; . The first two requirements of section 6013(e) have been met.Petitioner and Rose filed a joint return. The parties have stipulated that there was a substantial understatement of tax on the joint income tax return for 1981. Petitioner has failed to meet his burden of proving that in signing the return he did not know and had no reason to know that there was a substantial underpayment of tax on the couple's return for 1981. Based on our evaluation of petitioner's credibility, we do not hesitate to find that he had no actual knowledge of the omitted income. However, we believe he is unable to satisfy the alternate prong of the test that he had no reason to know of such omission. In order to satisfy his burden of proof that he had no reason to know of the omitted income, petitioner must establish that a reasonably prudent taxpayer, with his knowledge of the family finances, would have no reason to know of the omission. ; *70 . Under the facts in this case, a reasonably prudent taxpayer with petitioner's knowledge of the family finances would have reason to know that the embezzled funds were omitted from the 1981 returns. On January 5, 1982, Rose was arrested on charges of grand theft of $2 million during 1980 and 1981, forgery and arson. Petitioner learned of the charges against Rose on the same day. On February 8, 1982, Rose pleaded nolo contendere to the charge of grand theft of $2 million in 1980 and 1981. After February 9, 1982, petitioner signed a blank Form 1040 that Rose completed and filed as the couple's joint Federal income tax return for 1981. Petitioner did not review the return before Rose mailed it. Petitioner's awareness of Rose's indictment and nolo contendere plea should have put him on sufficient notice to review the return before it was mailed and gave him reason to know that the embezzled funds were omitted. See ; . Petitioner also closed his eyes to Rose's lavish expenditures. *71 Rose took care to hide her purchases from petitioner. Nevertheless, many of her expenditures could not be hidden. Rose changed her wardrobe frequently. Fresh flowers and green plants were delivered to the house on an almost daily basis. During 1980 and 1981, Rose spent approximately $23,411 redecorating their home. In 1980, petitioner and Rose purchased a one-half interest in a condominium for $50,000.Petitioner administered the joint savings accounts and knew that when they purchased their interest in the condominium the couple had only $18,697.94 in savings. Petitioner's involvement in the two businesses owned by his stepdaughter and her husband should have given him notice that Rose was funneling large sums of money into the businesses, in which he was more than tangentially involved. For example, not only did he write estimates for the work done by the auto towing (T & H) and auto body (DJ) shops, but he also accepted payments from the customers. He wrote checks to suppliers and even wrote and signed payroll checks. A spouse "cannot close [his] eyes to unusual or lavish expenditures, or to other facts, that might give [him] reason to know of the unreported income. *72 " .Accordingly, petitioner is not an innocent spouse under section 6013(e).[5]
Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to sections of the Internal Revenue Code of 1954 in effect during the years in issue. All rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Section 424(a) of the Tax Reform Act of 1984 amended section 6013(e), with retroactive application to all taxable years to which the Internal Revenue Code of 1954 and 1939 applies, Pub. L. 98-369, section 424, 98 Stat. 801; H. Rept. 98-432, Part 2 1501, 1503 (March 5, 1984). ↩
3. A "substantial understatement" means an understatement that exceeds $500. Section 6013(e)(3). ↩
4. The term "grossly erroneous items" means any item of gross income which is omitted from gross income and any claim of a deduction, credit or basis in an amount for which there is no basis in fact or law. Section 6013(e)(2).↩
5. Respondent also contends that petitioner has also failed to satisfy the fourth requirement of section 6013(e) that it would be inequitable to hold petitioner liable for the deficiency in tax attributable to the unreported embezzled income on the 1981 return. Because we have decided that petitioner had reason to know of the omitted income and is therefore ineligible for innocent spouse status under section 6013(e), it is unnecessary to address this issue.↩